1

2

3

4

5

6

7

8

9                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
                              AT TACOMA
10

11   DENNIS FLORER,

                                           Case No.  C06-5561 RJB/KLS
12                     Plaintiff,

                                           ORDER GRANTING
13          v.                             PLAINTIFF'S MOTION TO
                                           AMEND COMPLAINT
14   CHERYL JOHNSON, *et al.*,

                       Defendants.
15

16          Before the Court is Plaintiff Dennis Florer's motion to amend.  Dkt. # 161.   This case was

17   previously stayed pending resolution of trial on the merits of Mr. Florer's case in the Eastern District of

18   Washington, *Florer v. Peck*, CV-05-5039EFS (the "Eastern District case[1]").  Dkt. # 156.  The Court is

19   advised that judgment has been entered in the Eastern District case and the parties have now presented

20   their arguments as to the impact of that ruling on Mr. Florer's pending motion to amend.

21          In the proposed second amended complaint, Mr. Florer claims that the 2004, 2006 and 2008

22   kosher and mainline dietary menus offered by the Department of Corrections (DOC) are nutritionally and

23   religiously inadequate.  He names three individuals employed as dieticians at the DOC as defendants.

24   The proposed amended complaint deletes 33 named defendants and three Washington private food

25   contractors, and deletes several claims including a claim of retaliation and claims under RCW 7.72

26   (Product Liability Actions), 21 C.F.R. § 101.9 (Nutritional Labeling of Food) and 9 C.F.R. § 317

27   (Labeling, Marking Devices and Containers).

28
_____

        [1]Docket entries in the Eastern District case shall be referred to herein as "ED Dkt. # __".

ORDER
Page - 1

Defendants object to the proposed amendment, arguing that Mr. Florer's claims as to the religious and nutritional adequacy of the 2004 kosher diet are barred by the doctrine of *res judicata* by rulings in the Eastern District case. They argue that proposed claims based on the religious and nutritional adequacy of the kosher and mainline diets from 2004 through the present day are similarly barred because Mr. Florer could have raised them in the Eastern District case. Defendants also argue that they would be prejudiced by allowing the amendment at this stage, as it would necessitate the reopening of discovery and filing of more dispositive motions.

The Court, having reviewed the parties' briefing, including Defendants' Supplement (Dkt. # 164), Plaintiff's Reply (Dkt. # 172), Response Memorandum (Dkt. # 173),[2] and balance of the record, finds that Mr. Florer's proposed amendments are not barred by res judicata and that his motion to amend should be granted.[3]

## BACKGROUND

**A. The Eastern District Case**

In his Supplemental Amended Complaint filed on September 28, 2005 in the Eastern District case, Mr. Florer sued individual DOC employees at the Washington State Penitentiary (WSP), claiming that they violated his rights under the First and Eighth Amendments.[4] ED Dkt. # 89. His claims were based on the alleged religious and nutritional inadequacy of the kosher diet he received, the failure of the institution where he was held to provide him with religious materials, a retaliation claim, a claim alleging that he was housed in discouraging conditions and a claim based on the institution's failure to process grievances. *Id.*

On July 30, 2007, Defendants were granted summary judgment on Mr. Florer's claims that the

---

[2]Plaintiff also filed a request to file an overlength brief (Dkt. # 168), stating that he was confused as to whether he was responding to his motion to amend or the Defendants' motion for summary judgment. Dkt. # 168. He also filed a praecipe to attach exhibits. Dkt. # 169. However, Plaintiff clearly identifies his subsequent Reply (Dkt. # 172) as his "reply to Dkt. # 165 Re Motion to Amend."

[3]Related to Mr. Florer's motion to amend are his subsequently filed motions that a ruling on his motion to amend be held in abeyance (Dkt. # 175) and for Rule 11 sanctions (Dkt. # 176). These motions are dealt with by separate order.

[4]Defendants in the Eastern District case included William Peck, Ron Denny, Larry Langhoff, Janet Harper, Sean Scanlon, Dwitte Ellison, Megan Gilbertson, Shirley Clark, John Johnson, Patricia Gleason, Tim Richmond, Kieth Power, Kerri Robonson, Ron Knight, Diane Benfield, Paul Owens, Sean Murphy, John Moore, Dave Snell, Sherry Hartford, Richard Morgan, Brad Simpson and Cheryl Johnson. ED Dkt. # 89.

1  diet he was served at WSP was religiously inadequate in violation of his First Amendment rights.  ED

2  Dkt. # 445, pp. 8-11.  Defendants were also granted summary judgment on Mr. Florer's claims that (1)

3  despite repeated requests he was not given a torah and thus, his practice of religious was burdened (*Id.* p.

4  9); (2) he was subjected to discouraging conditions of confinement (*Id.*, p. 10); and (3) that Defendants

5  failed to process his grievances.  *Id.*

6      On August 20, 2007, Judge Shea denied Defendants' motion for summary judgment on Mr.

7  Florer's claims regarding the nutritional inadequacy of the kosher diet he was served at WSP under the

8  First and Eighth Amendments.  ED Dkt. # 446, pp. 8-9, 12.[5]   As to the issue before the court on summary

9  judgment, Judge Shea explained:

10       "Plaintiff does not dispute that the Department of Corrections had a policy under which it
         provided Plaintiff with a kosher diet, rather Plaintiff's remaining argument is that the diet

11       he was actually served was nutritionally inadequate.  Therefore, in order to defeat
         Defendants' motion for summary judgment on the issue of the diet Plaintiff was served,

12       Plaintiff must demonstrate that an issue of material fact remains as to whether the diet
         Plaintiff was served was nutritionally adequate.

13  ED Dkt. # 446, p. 4

14      On September 8, 2008, Judge Shea granted Defendants' motion to dismiss Defendant Sean

15  Murphy and the retaliation claim.  ED Dkt. # 592.

16      At the time of trial, only Mr. Florer's claims against Defendant Diane Benfield, a Registered

17  Clinical Dietician at WSP, remained.  Mr. Florer contended that WSP's 2004 kosher diet was nutritionally

18  inadequate, that the portion sizes in WSP's 2004 kosher diet as written differed from the portion sizes

19  actually served, that Ms. Benfield inflicted cruel and unusual punishment upon him and interfered with

20  his practice of Judaism by not providing a nutritionally adequate kosher diet while he was incarcerated at

21  WSP.  ED Dkt. # 592, p. 2; ED Dkt. # 598, p. 3.  Mr. Florer claims that he suffered severe physical and

22  psychological injuries due to weight loss while incarcerated at WSP in 2004.  ED Dkt. # 598, p. 3.

23      On September 10, 2008, the Court dismissed Mr. Florer's case on Defendants' motion for

24  judgment as a matter of law.  ED Dkt. # 165, Exh. 1, Attachment A.  Relevant portions of the Court's

25  ruling are as follows:

26

27

28       [5]The Court also dismissed eighteen of the twenty-three named defendants because Mr. Florer did not
    allege sufficient facts for the Court to find individual participation on the part of their part.  *Id.*, p. 11.  (Only
    Defendants Peck, Benfield, Moore, Murphy and Snell remained at that time.)

1   　　　[H]is real purpose is either to demonstrate that Ms. Benfield had the authority to
change or alter the diet and the menu, and she did not. She could exchange within the
2   days, as Ms. Bales has explained – and here Bales and Johnson are used interchangeably –
and she did so. The evidence is that when she was aware of the issues, she addressed them
3   appropriately and conducted herself consistent with her responsibilities to address inmate
concerns of this kind. Here where a weight loss occurred, she saw it, appropriately
4   prescribed a booster and other snacks, varying those snacks to accommodate Mr. Florer's
responses, some discomfort with regard to the milk, some concerns about the soy product,
5   the caloric intake to supplement, which on its face was at the very least a 2100 –
approximately 2100-calorie diet, boosting him at least to a 24 and in some instances to
6   2700 calories with the booster product, convened a team meeting because of a concern
about his severe weight loss and considered institutionalizing him, that is, putting him in a
7   medical unit to deal with this weight loss issue if he went below a certain weight. That
was consistent with her responsibilities.
8
　　　And there is no evidence that she acted in any way to interfere with his exercise of
9   Judaism. She, in fact, attempted to accommodate his needs for Kosher diet and varying
within in [sic] it depending upon his independent reaction to it.
10
　　　As to the First Amendment clause, there is no proof, and the case is dismissed. That
11  claim is dismissed.

12  　　　As to the Eighth Amendment, she – she did all of the things she should have done.
While, it's possible there could have been a harm had he gone below a certain weight,
13  there was no substantial risk of that given her continued vigilance with regard to his weight
loss and her efforts to correct those. She acknowledged that and was sensitive to it. She
14  did not disregard it. Nothing she did caused the – caused Mr. Florer any harm whatsoever.

15  　　　The essence of Mr. Florer's issues are that there may – from his point of view,
some of the foods were served in containers that made it inedible, and the other concern is
16  that there may not have been enough caloric intake from his viewpoint or micronutrients
that should have been contained in the diet. That's a case for another day in another
17  location.

18  *Id.*, Attachment B.

19  　　　Mr. Florer has appealed to the Ninth Circuit Court of Appeals. *Id.*, Attachment C.

20  **B.　　Plaintiff's First Amended Complaint and Relief Sought in This Case**

21  　　　Plaintiff filed his original complaint in October 2006. Dkt. # 5. In March 2007, the Court denied

22  Defendants' motion to dismiss Plaintiff's original complaint and granted Plaintiff leave to file an

23  amended complaint. Dkt. # 58. Plaintiff filed his First Amended Complaint on April 18, 2007. Dkt. #

24  62.

25  　　　In his First Amended Complaint, Mr. Florer alleges violations of his First, Eighth, and Fourteenth

26  Amendment rights and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Dkt. # 62).

27  Mr. Florer also claims violations of RCW 7.72 (Product Liability Actions), 21 C.F.R. § 101.9 (Nutritional

28  Labeling of Food) and 9 C.F.R. § 317 (Labeling, Marking Devices and Containers). *Id.* Mr. Florer

1  alleges that the foods actually served to him on the kosher and mainline diets did not meet the minimally

2  acceptable standards of nutrition set by the Department of Health and Human Services or U.S.

3  Department of Agriculture Dietary Guidelines for Americans and that the foods actually served did not

4  maintain him at his natural body weight.  Dkt. # 62, pp. 9-10.

5        Mr. Florer's claims cover a period of time from December 1, 2004 through April 2006, while he

6  was housed at WCC, CBCC and SCC.  *Id*.  Mr. Florer also alleges that Defendants destroyed any spiritual

7  value that he might have achieved through the Kosher diet, Biblical fast days, Rabbanic fast days and

8  Passover and he stopped attempts to practice Judaism in April of 2006.  *Id*., p. 9.  Mr. Florer also claims

9  that Defendants retaliated against him by failing to make photocopies and by failing to respond to

10  grievances. *Id*., pp. 26-27.

11        The plaintiff named 35 individual defendants and 25 John Does, including the chaplain, food

12  service cooks, food managers, dieticians, correctional officers and grievance coordinators at DOC, SCCC

13  and WCC, and three Washington private food contractors, for events occurring from December 1, 2004 to

14  April 2006 at WCC, CBCC and SCCC.

15  **C.    Plaintiff's Proposed Amendment In This Case**

16        In his proposed Second Amended Complaint (Dkt. # 161), Mr. Florer seeks to drop all of the

17  named Defendants except two individuals, former food manager Cheryl Johnson Bales (formerly Cheryl

18  Johnson, who was named in the Eastern District case), and current food program manager Jay Jackson.

19  Mr. Florer has recently advised the parties of a newly discovered defendant and asserts that he now needs

20  to add a "registered dietician," named in Grievance Log No. 0823868.[6]  Dkt. # 161, p. 6.  Mr. Florer

21  argues that the nutritional inadequacy of the 2004 kosher menu remains to be litigated.  He relies on the

22  following passage from Judge Shea's ruling on the Defendants' motion for judgment as a matter of law:

23        The essence of Mr. Florer's issues are that there may – from his point of view,
      some of the foods were served in containers that made it inedible, and the other concern is
24      that there may not have been enough caloric intake from his viewpoint or micronutrients
      that should have been contained in the diet.  That's a case for another day in another
25      location.

26  Dkt. # 165, Exh. 1, Attachment A

27  _____

28        [6]*See* Dkt. # 172, p. 6, Mr. Florer states that he has discovered another new party as to his claims as
    to the 2008 mainline menu, a Registered Dietician named in Grievance Log No. 0823868.

1     In his proposed amendment, Mr. Florer claims that Ms. Bales wrote the 2004 and 2006 kosher and

2  mainline menus for use by institutions within the DOC, but that the menus do not meet U.S. Department

3  of Agriculture, U.S. Department of Health and Human Services Dietary Guidelines and Dietary Reference

4  Intakes.  He alleges that Mr. Jackson wrote the menus for 2008 and that they suffer from these same

5  deficiencies.

6     Mr. Florer asserts that the menus are nutritionally inadequate because they do not meet the

7  aforementioned guidelines and that they are religiously inadequate because they placed a substantial

8  burden on his ability to exercise his religion, all in violation of his rights under the First and Eighth

9  Amendments and RLUIPA.  Dkt. # 161-3.   Mr. Florer alleges that the nutritional inadequacies of the

10  diets subjected him to a substantial risk of harm in that it does not maintain his usual body weight of 185

11  to 190 pounds.  *See*, *e.g.*, Dkt. # 161-3, p. 6.

## II. DISCUSSION

13     Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a), "[a] party may amend

14  the party's pleading once as a matter of course at any time before a responsive pleading is served."

15  Otherwise, the party "may amend the party's pleading only by leave of court or by written consent of the

16  adverse party." *Id*.  Leave to amend "shall be freely given when justice so requires," and "this policy is to

17  be applied with extreme liberality." *Id.; Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079

18  (9th Cir. 1990).  After a responsive pleading has been filed, "leave to amend should be granted unless

19  amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue

20  delay." *Martinez v. Newport Beach City*, 125 F.3d 777, 786 (9th Cir. 1997).

21     Although the amendment rules are liberal, they do not require that courts indulge in futile

22  gestures.  *Deloach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968).  If a proposed amendment could not

23  withstand a motion to dismiss, a court is justified in denying a motion to amend the pleadings made

24  pursuant to Rule 15(a).  *Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646

25  (9th Cir. 1984); *Glick v. Koenig*, 766 F.2d 265 (7th Cir. 1985).  In addition, a proposed amendment that

26  necessitates reopening discovery or that creates the need for further discovery causes undue prejudice to

27  the opposing party.  *Lockhead Martin Corp. v. Networth Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999).

28

**A.    Res Judicata**

Defendants argue that the doctrine of *res judicata* bars Mr. Florer's claims as to the religious and nutritional adequacy of the 2004 kosher diet because of the rulings in the Eastern District case. Dkt. # 165, p. 5.   In addition, Defendants argue that Mr. Florer is precluded from asserting claims based on the religious and nutritional adequacy of DOC's kosher and mainline diets from 2004 through the present day because he could have raised them in the Eastern District case when he amended his complaint on September 12, 2005. *Id.*, p. 6.  Defendants reason that as of that date, Plaintiff had received the kosher diet and mainline diets and could have included all claims regarding the diets at that time.  Defendants also argue that Mr. Florer could have brought a claim for recovery under RLUIPA in the Eastern District case, but he chose to only raise his claim in that court under the First Amendment.  *Id*. at p. 7.  Thus, his attempt to amend to add a RLUIPA claim now is barred under *res judicata*.  *Id*.

Mr. Florer objects because his attempts to amend his claims in the Eastern District case to include claims for on-going activities relating to the kosher and mainline diets occurring while he was incarcerated at WCC, CBCC and SCCC were denied.[7]   Dkt. # 173, p. 5.  The defendants in the Eastern District case strenuously objected that the Eastern District was not the proper venue for any claims arising out of Mr. Florer's incarcerations at WCC, CBCC and SCCC as none of the named employees of those institutions live in any of the counties that comprise the Eastern District. Dkt. # 174, p. 4.  They also argued that the Eastern District of Washington lacked jurisdiction to consider claims against individuals working in DOC institutions in the Western District of Washington.  Defendants argued that each DOC institution is expected to follow the kosher menu that is developed and maintained at the DOC level by the food program manager.  However, if an inmate alleges that something is wrong with how the menu is being served at a particular institution, the DOC food program manager has no control over the menu *as applied in the institutions.*  Dkt. # 174-2, pp. 8-9.[8]

Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims

---

[7]Mr. Florer attempted to add Jay Jackson.  Cheryl Johnson was already a named party.  (ED Dkt. # 156-1, p. 1).

[8]As Food Program Manager for the DOC, Cheryl Johnson attested that she plans menus and establishes the three week kosher menu cycle for the DOC and that each institution within the DOC is instructed to follow the three week kosher menu.  (ED Dkt. # 174, Exh. 6).  She also attested that each institution may make adjustments as necessary if menu items are unavailable.  *Id*.

that were raised or could have been raised in the prior action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982); *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192. Res judicata applies when there is 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties. *Blonder-Tongue Lab v. University of Ill. Found.*, 402 U.S. 313, 323-24 (1971); *Western Radio Servs.,* 123 F.3d at 1192. Res judicata applies when the prior judgment and the second action are similar with respect to the subject matter, the cause of action, the persons and parties, and the quality of the persons for or against whom the claim is made. *Feminist Women's Health Center v. Codispoti*, 63 F.3d 863, 866 (9th Cir. 1995). A change in the legal theory underlying claims brought in the first round of litigation will not defeat res judicata. *See Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 988 (9th Cir. 2005).

To determine whether the causes of action are identical, courts consider the following: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions, (3) whether the two suits involved infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Costantini,* 681 F.2d at 1201. The last of these criteria is considered most important, and "[n]o single criterion can decide every res judicata question [because] identity of causes of action cannot be determined precisely by mechanistic application of a simple test. *Femnist Women's Health Center*, 63 F.3d at 867; *Costantini*, 681 F.2d at 1202 n. 7.

A close review of Mr. Florer's claims in the Eastern District case and his proposed claims in this case leads to the conclusion that the two suits do not arise out of the same transactional nucleus of facts.

Mr. Florer claimed that the 2004 kosher diet he received at WSP was religiously inadequate because: (1) the DOC's expert responsible for creating and implementing the DOC's kosher diet is not certified in kashruth supervision, (2) an employee of a kashruth supervision agency must be present at all times when the food service department is in operation in order to maintain the kosher laws, (3) there were problems with the kosher menu as written including the food preparation[9], and (4) based on these breaches, Mr. Florer was religiously defiled by consuming non-kosher foods. *See e.g.,* ED Dkt. # 445, p.

---

[9]The Court noted that the "heart of this contention appears to be that despite prison policy, on some occasions Plaintiff was served food that was not religiously adequate." (ED Dkt. #445, pp. 7-8).

ORDER
Page - 8

6. He claimed that the 2004 kosher diet he received at WSP was nutritionally inadequate because (1) it did not contain supplement snacks, (2) it was a repetitive 3-week cycle menu, (3) it contained inedible food, and (4) defendants failed to coordinate Dietetics and General Nutritional Services with WSP closed custody food service. Dkt. # 89, pp. 80-81.

Mr. Florer was at WSP from September 11, 2003 until December 1, 2004.[10]  His claims covered a specific period of six and one-half months while he was on 23 to 24 hour a day lockdown. *See, e.g.*, ED Dkt. # 34, p. 32.

In the present litigation, Mr. Florer seeks to amend his complaint to include allegations that Cheryl Bales (formerly Johnson) wrote the 2004 kosher menu for DOC, the menu was sent to each institution with instructions to follow the menu, and that he received the 2004 kosher menu at WCC in December 2004, CBCC in December 2004-2005, SCCC in September 2005-April 2006. Dkt. # 161-3, p. 5. Mr. Florer alleges that the menus as written failed to meet certain dietary guidelines. *Id*., pp. 4-6. He alleges that the 2004 kosher menu is religiously inadequate and interfered with his exercise of Judaism. *Id*., p. 6. He alleges that the 2004 kosher menu is nutritionally inadequate because it does not allow him to maintain his usual body weight. *Id*. Mr. Florer also alleges that the 2006 kosher and mainline menus and 2008 kosher and mainline menus (written by Defendant Jay Jackson) suffer from these same deficiencies. *Id*., pp. 7-15.

Turning first to the proposed allegations as to the 2006 and 2008 kosher and mainline menus, the Court concludes that these claims do not arise from the same nucleus of facts as the claims in the Eastern District case as they occurred in a time period distinct from that alleged in the Eastern District case. In *Costantini*, the Ninth Circuit ruled that the successive claim brought by plaintiff was barred by res judicata even though plaintiff claimed to have discovered additional supporting evidence. *Id*. at 1202. The court reasoned that such evidence could have been unearthed during the discovery stages of the prior action and was insufficient to establish a distinct transactional nucleus of fact. *Id*. Outside of this evidence, the cause of action alleged in the second claim was identical to that of the first. *Id*.

In *Costantini*, the plaintiff was alleging new facts in support of a claim that was essentially identical to the previous one. This is not the case here. Here, Mr. Florer seeks to attack the 2006 and

---

[10]Dkt. # 141, p. 3, Exh. 1, Attach. A (Legal Face Sheet).

1   2008 kosher and mainline menus as written that he received while he was incarcerated at WCC, CBCC

2   and SCCC. He has not included a claim relating to the 2004 kosher menu for the diet served to him while

3   he was housed at WSP from September 11, 2003 until December 1, 2004. Although Defendants argue

4   that Mr. Florer's claims arise generally from the 2004 kosher menu that is applied statewide, the Court

5   does not agree. Mr. Florer's new allegations do not serve as additional support for the prior claim, but as

6   grounds for new claims stemming from different periods of time at different institutions. These temporal

7   and geographical distinctions remove Mr. Florer's claims for the 2006 and 2008 kosher and mainline

8   menus from the res judicata bar. (This is particularly true in light of Defendants' previous arguments that

9   each DOC institution is expected to follow the kosher menu that is developed and maintained at the DOC

10  level by the food program manager but if a inmate alleges that something is wrong with how the menu is

11  being served at a particular institution, the DOC food program manager has no control over the menu *as*

12  *applied in the institutions.* Dkt. # 174-2, pp. 8-9.[11]) This means that Mr. Florer's new claims are distinct

13  from his previous claims that the WSP menu was nutritionally deficient, where he was required to sue

14  individual defendants employed at WSP where the menu was served.

15      As to Mr. Florer's allegations that the 2004 kosher menu that he received at WCC, CBCC and

16  SCCC was nutritionally deficient, Defendants further argue that Mr. Florer could have asserted this claim

17  during the time while the Eastern District case was pending because this claim is based on the statewide

18  menu. However, these claims also occurred in a time period distinct from that of the Eastern District

19  case and Mr. Florer alleges that the 2004 menu as written does not meet nutritional and dietary guidelines.

20  As noted above, Mr. Florer allegations in the Eastern District case as to the 2004 kosher menu were based

21  on the diet he received for the six month period of time he was in lockdown at WSP. *See, e.g.*, ED Dkt. #

22  34, p. 32. As explained by Judge Shea in that case, Mr. Florer did not dispute that the DOC had a policy

23  to provide him with a kosher diet, but he was arguing that the diet he was actually served was

24  nutritionally inadequate. Dkt. # 446, p. 4.

25      Defendants further argue that Mr. Florer should have been required to amend his pleading to

26

27      [11]As Food Program Manager for the DOC, Cheryl Johnson attested that she plans menus and
    establishes the three week kosher menu cycle for the DOC and that each institution within the DOC is
28  instructed to follow the three week kosher menu. (ED Dkt. # 174, Exh. 6). She also attested that each
    institution may make adjustments as necessary if menu items are unavailable. *Id.*

ORDER
Page - 10

1  allege these claims in the Eastern District case and that his failure to do so bars him from bring them now.

2  This is not true. *See SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2nd Cir. 1996) ("If a

3  defendant engaged in actionable conduct after a lawsuit is commenced, the plaintiff may seek leave to file

4  a supplemental pleading to assert a claim based on the subsequent conduct ....  But he is not required to do

5  so, and his election not to do so is not penalized by application of res judicata to bar a later suit on that

6  subsequent conduct."); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739

7  (9th Cir. 1984).

8         In this case, it appears that Mr. Florer is alleging that the 2004, 2006 and 2008 kosher and

9  mainline menus *as written* are nutritionally and religiously deficient in violation of his First and Eighth

10  Amendment rights (and RLUIPA).  His claim is that the menus are supposed to be written according to

11  certain governmental guidelines and they did not meet those guidelines.  He does not appear to be

12  attacking the menus on the basis of how they are being *applied* in the particular institutions where he has

13  been or is housed.  Consequently, these new allegations require that he sue individuals who are

14  responsible for the content of the menus.  This Court's conclusion that allegations in Mr. Florer's

15  proposed amendment do not arise from the same nucleus of transactional facts as those in his previous

16  litigation is further supported by comments made by Judge Shea during trial in the Eastern District case:

17      Mr. Florer    So this is an issue that we were at yesterday.  You were saying, well, you
18                        need to prove that since the menu was written in '04 that these dietary
                         intakes haven't changed since '05.  Well, the person who wrote the menu in
19                        '04, Cheryl Johnson, used – should have used these guidelines, and I have a
                         letter from her. ...My concern is this: So whether the Kosher diet is
20                        nutritionally adequate, is that an issue or not in this case?  Because I have
                         another case in the Western District, and I could use this over there, 2005
21                        guidelines, with Ms. Johnson's 2005 – 2006 Kosher menu, Lachney's
                         report, and I can show that, okay, the diet is nutritionally deficient, does not
22                        meet RDI's as DOC policy states.  But if they win here, then – and they say,
                         well, the Kosher diet is all of a sudden nutritionally adequate, they win here,
                         then I'm stopped from litigating the case from over there with my evidence.
23
       The Court:    That's probably true.  Your case here – who's your case against over there?
24
       Mr. Florer:    Cheryl Johnson, the person who wrote the menu.
25
       The Court:    Well, that's a different case than this defendant.  This defendant –
26
       Mr. Florer:    I realize that.  But if they win this with Lachney because I can't use this,
27                        then they just take it over there and say, well, guess what, nutritionally
                         adequate.
28
       The Court:    That's correct.

| | | | |
|---|---|---|---|
| 1 | Mr. Florer: | Right. | |
| 2 | The Court: | That's a good analysis on your part. What do you want to do? | |
| 3 | Mr. Florer: | Dismiss with –without prejudice so I can just go over there and litigate my case. | |
| 4 | | | |
| 5 | The Court: | No. This defendant is different from Ms. Johnson. You have an issue. And I think I always understood your issue, Mr. Florer, to be with the DOC Kosher diet and its nutritional content, but I had told you at some point in the past that that was not the – this issue, you weren't taking on the State, and you didn't have any person here who was a defendant in this State – in the case who would get to that point. You were – you're right. You're right over in the Western District with the right person who devised the diet. This person either did not did not by her behavior violate your rights. | |
| 6 | | | |
| 7 | | | |
| 8 | | | |

Dkt. # 174, pp. 14-16 (CM/ECF page numbering).

For these reasons, the undersigned concludes that the proposed allegations do not arise from the same nucleus of transactional facts as those contained in the prior complaint and thus are not barred by res judicata.

Defendants make no argument that any rights or interest established in the prior judgment would be destroyed or impaired by prosecution of the second action or that substantially the same evidence would be presented in the two actions. Based on its review of the proposed amendments, the Court concludes that these factors are not implicated by allowing the amendment as the cases are not identical. The Court need also not address the remaining res judicata factors based on its finding that the proposed allegations do not arise from the same nucleus of transactional facts as those contained in the prior complaint.

**B. Claims Under RLUIPA**

Defendants also argue that Mr. Florer is precluded from alleging that the kosher diet violates his rights under RLUIPA because he could have brought a claim for recovery under RLUIPA in the Eastern District Case. Dkt. # 165, p. 7.[12]   This would be true if Mr. Florer now sought to claim that the diet he received at WSP from the 2004 kosher menu violated his rights under RLUIPA. Clearly, those claims would be barred under the doctrine of *res judicata* as he could have brought them in the Eastern District case, but chose only to bring his claims under the First Amendment. *See, Int'l Union of Operating Eng'rs*

---

[12]Mr. Florer sought to bring a claim for recovery under RLUIPA in the Eastern District case, but his motion was denied as he made the claim only against individuals and entities who were not governments or state actors. (ED Dkt. # 179, p. 6).

ORDER
Page - 12

1  *v. Karr*, 994 F.2d 1426, 1429 (9ᵗʰ Cir. 1993) (The doctrine of *res judicata* bars a second suit on the same

2  claim or on different claims arising from the same facts – thus, the bar reaches both grounds of recovery

3  that were asserted and those that were not asserted but could have been.)  In ruling on his claim that the

4  kosher menu was religiously inadequate, Judge Shea noted that "Defendants and the Court further assume

5  that Plaintiff's First Amendment claim is one of free exercise." (ED Dkt. # 445, p. 4).  As noted above,

6  however, Mr. Florer is not making any new claims based on the time he spent at WSP.

7         The Court disagrees with Defendants' assertion that they will be prejudiced by the inclusion of a

8  RLUIPA claim in this action as they have been on notice from the onset that Mr. Florer alleged violation

9  of RLUIPA.  Mr. Florer's original complaint included allegations of violation of RLUIPA (Dkt. # 1, p. 4),

10  as did his First Amended Complaint. *See, e.g.,* Dkt. # 62, p. 18.  Thus, Defendants' argument that the

11  doctrine of *res judicata* bars the raising of a RLUIPA claim is without merit.

12  **C.     Other Considerations Regarding Proposed Amendment**

13         Defendants also argue that if Mr. Florer is permitted to amend his complaint, they will have to file

14  another answer, and be required to engage in another round of discovery.  They state that they have

15  already engaged in extensive discovery, producing 10,482 documents responsive to requests for

16  production, based on the content of the First Amended Complaint.  Dkt. # 165, Exh. 1.  ( Mr. Florer

17  disputes the accuracy of this statement, claiming that most of the documents produced were billing

18  invoices for food purchases for the mainline diet.  Dkt. # 172, p. 4.).  Defendants also argue that their

19  motion for summary judgment remains pending.

20         In their motion for summary judgment, Defendants request dismissal of Mr. Florer's claims

21  regarding the kosher diet under the doctrine of *res judicata*, argue that they are entitled to qualified

22  immunity and in the alternative, requested a stay pending judgment in the Eastern District case.  Dkt. #

23  141, p. 5.  The Court has addressed the issue of *res judicata* in this Order.  A stay was granted and has

24  now been lifted.  There can be no prejudice to the Defendants by permitting the Plaintiff to amend his

25  complaint so the allegations are clear and the Defendants will be in a position to again raise the qualified

26  immunity defense.

27         With the proposed amendments, numerous DOC employees and three Washington private food

28  contractors and several claims including a retaliation claim and those under RCW 7.72 (Product Liability

ORDER
Page - 13

1 Actions), 21 C.F.R. § 101.9 (Nutritional Labeling of Food) and 9 C.F.R. § 317 (Labeling, Marking

2 Devices and Containers) will be deleted. Although the case has been on file for a number of years,

3 discovery has been stayed twice while Defendants sought dismissal and the parties' awaited judgment in

4 the Eastern District case.

5       Accordingly, the Court finds that granting leave to amend will not cause undue prejudice or delay

6 nor does it find that the amendment is sought in bad faith. Therefore, it is **ORDERED:**

7     (1)    Plaintiff's motion to amend (Dkt. # 161) is **GRANTED** with regard to Mr. Florer's
allegations that the 2004, 2006 and 2008 kosher and mainline menus received by him at

8             WCC, CBCC and SCCC are religiously and nutritionally inadequate. Plaintiff shall file a
proposed Third Amended Complaint **on or before May 29, 2009** to include factual

9             allegations as to Defendants Cheryl Johnson Bales and Jay Jackson and "Registered
Dietician Identified in Grievance Log No. 0823868". In addition, Plaintiff must include

10             factual allegations regarding the applicability of kosher menus in light of the fact that
Plaintiff stopped requesting kosher menus three years ago, in April 2006.

11

12     (2)    The Clerk shall strike Defendants' motion for summary judgment (Dkt. # 141) from the
docket. The Court will issue a new scheduling order after the filing of a new complaint
and Defendants' answer.

13

14     (3)    The Clerk shall send copies of this Oder to Plaintiff and counsel for Defendants.

15     DATED this _4th_ day of May, 2009.

16

17

18                           Karen L. Strombom

19                           United States Magistrate Judge

20

21

22

23

24

25

26

27

28

ORDER
Page - 14